AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.    MJ20-572
)
Residence and Vehicle used by Kelly Thomas Jackson )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 844(f)(1) and (i) | Arson |
| 26 U.S.C. § 5861(d) | Unlawful Possession of Destructive Devices |

The application is based on these facts:
✓  See Affidavit of FBI Special Agent Nathan Plough, continued on the attached sheet.

☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Nathan Plough, FBI Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:    09/02/2020

_____
*Judge's signature*

City and state:  Seattle, Washington

Michelle L. Peterson, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**
**Property to be Searched**

The property to be searched is described as:

1. The premises located at 21329 95th Avenue West, Edmonds, Washington; further described as a two-story, single family home with blue exterior and white trim.  The home has a single white garage door and a front yard with a stacked stone retaining wall nearest the street.

2. A white 2002 Toyota Tacoma pickup truck, with Washington license plate C76599N, and large "TRD" letters on the tailgate and side.

**ATTACHMENT B**
**Property to be Seized**

Records (in whatever form) relating to violations of Unlawful Possession of Destructive Devices, 26 U.S.C. § 5861(d), and Arson, 18 U.S.C. § 844 (f)(1) and 844(i), that is:

1.      Clothing and items worn and carried by the suspect during the arsons on May 30, 2020, including but not limited to:

      a.      Black hoodie with white screen print and lettering "Star Six Seven";

      b.      White Nike Air Force One shoes;

      c.      Black Smith ski goggles with orange/yellow lens;

      d.      Khaki 4-pocket pants;

      e.      Small black sling/fanny pack;

      f.      High Sierra black backpack;

      g.      Red/black/white facemask/head scarf with Sanskrit or similar pattern;

      h.      Half-face respirator.

2.      Molotov cocktail devices, and documents, materials, and items relating to the manufacture and use of Molotov cocktail devices.

3.      Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises including canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys.

4.      Evidence indicating state of mind and motive as it relates to the crimes enumerated above, including but not limited to records related to protests occurring in Seattle and other locations during late May and June 2020.

//
//
//
//

Attachment B
USAO#2020R00533 – Page 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    5.  Smartphones and other communications devices may be searched for any and all *reasonably associated with Jackson*

2    evidence of the crimes listed above in whatever form, including:

3              a.    evidence of who used, owned, or controlled the device;

4              b.    passwords, encryption keys, and other access codes that may be

5    necessary to access the device or to access communication and financial accounts associated

6    with the device;

7              c.    communications made in furtherance of the crimes enumerated above;

8              d.    evidence indicating the user's state of mind as it relates to the crimes

9    enumerated above;

10             e.    evidence indicating how and when the subject device was accessed or

11   used, to determine the geographic and chronological context of device access and use, in

12   relation to the crimes under investigation and to the device user;

13             f.    evidence of the identities of and relationships between co-conspirators;

14   and

15             g.    photographic or video images related to the crimes enumerated above.

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment B
USAO#2020R00533 – Page 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

# AFFIDAVIT

STATE OF WASHINGTON )

) ss

COUNTY OF KING )

I, Nathan Plough, having been duly sworn, state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

I am a Special Agent with the Federal Bureau of Investigation (FBI). I have been a Special Agent with the FBI for approximately two and a half years. I am currently assigned to the Seattle Field Office where I am assigned to investigate domestic terrorism matters.

During my service with the FBI, I have investigated and participated in the investigations of criminal activity, including but not limited to: crimes against persons, crimes against property, and conspiracy against civil rights. During these investigations, I have participated in the execution of search warrants and the seizure of evidence indicating the presence of criminal violations. As an FBI Agent, I have also conducted or participated in physical surveillance, debriefings of informants, and reviews of records and recordings. I have also managed undercover operations. From these experiences, and from related training, I have become familiar with the ways in which persons coordinate, carry out, and conceal criminal activity. During past investigations, I have also participated in the execution of search warrants and the seizure of evidence indicating the presence of criminal violations.

The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## PURPOSE OF AFFIDAVIT

2   I submit this affidavit in support of an application under Rule 41 of the Federal Rules

3   of Criminal Procedure for a warrant to search the premises located at 21329 95th Avenue

4   West, Edmonds, Washington, and a white 2002 Toyota Tacoma pickup truck, with

5   Washington license plate C76599N, further described in Attachment A, for the things

6   described in Attachment B.  Based on the facts set forth in this affidavit, there is probable

7   cause to believe that violations of Tile 26, United States Code, Section 5861(d) (Unlawful

8   Possession of Destructive Devices), and Title 18, United States Code, Sections 844(f)(1) and

9   844(i) (Arson), have been committed by Kelly Thomas Jackson, and that evidence of those

10  violations will be found in the premises to be searched.

11

## SUMMARY OF PROBABLE CAUSE

12  **A. The Seattle Police Department.**

13  The Seattle Police Department is involved in interstate and foreign commerce and in

14  activities affecting interstate and foreign commerce.[1]  The Seattle Police Department also is

15  an institution and organization that receives Federal financial assistance.  I have received

16  information from SPD's Chief Administration Officer, who oversees the SPD Grants and

17  Contracts Unit, regarding the numerous federally funded grants SPD is currently receiving.

18  In summary, SPD is presently receiving funding from a variety of federal agencies, including

19  the Department of Justice, the Department of Homeland Security, and the Federal

20  Emergency Management Agency (FEMA).  Collectively, these grants total millions of

21

22

23

---

24  [1] *See United States v. Odom*, 252 F.3d 1289, 1294 (11th Cir. 2001) ("The legislative history of § 844(i) reveals that the statute was crafted specifically to include some non-business property such as police stations and churches.") (citing

25  *Russell v. United States*, 471 U.S. 858, 860 (1985)); *United States v. Laton*, 352 F.3d 286, 300 (6th Cir. 2003) ("When it crafted § 844(i) to encompass the arson of police stations, Congress recognized that the provision of emergency services

26  by municipalities can affect interstate commerce in the active sense of the phrase.") (citing *Jones v. United States*, 529 U.S. 848, 853 n.5 (2000); *Russell*, 471 U.S. at 860–61); *Belflower v. United States*, 129 F.3d 1459, 1462 (11th Cir.1997)

27  (holding that § 844(i) covered the bombing of a police vehicle which a local sheriff's deputy used in his law enforcement responsibilities and that destruction of a police car had "a significant impact on interstate commerce" because the deputy patrolled traffic and made arrests on an interstate highway, issued citations to out-of-state drivers, participated in

28  interstate narcotic investigations, assisted out-of-state authorities in apprehending suspects, recovered stolen property from other states, and attended law enforcement training sessions in other states).

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

dollars of federal funding provided to SPD in support of a variety of SPD's core duties and missions, including, but not limited to:

- Enhancing the safety of the community in the event of terrorist threats, active shooter threats, natural disasters, and the gathering of information helpful to law enforcement and the community regarding these sorts of serious threats;

- Providing crime prevention strategies and essential services to elderly, non-English speaking residents, refugees, deaf, blind and developmentally disabled residents of Seattle and working with communities to decrease crime by developing, implementing and coordinating crime prevention programs;

- Bolstering security measures related to the protection of the Port of Seattle;

- Funding the investigations of offenses involving acts of terrorism, chemical, radiological, or biological attacks, crimes against children, and human trafficking; and

- COVID Emergency Stimulus Funding used to pay for things such as personal protective equipment for officers; funding to backfill for officers testing positive for COVID or in quarantine; and the cost of providing protection for lives and property in the event of protests against statewide shelter-in-place orders or re-opening guidelines.

//
//
//
//
//
//
//
//
//
//
//

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B. The Arsons of Seattle Police Department Vehicles on May 30, 2020.**

On May 30, 2020, there was a large protest in the downtown area of Seattle, Washington. SPD officers and other employees were in the area to direct traffic and ensure the safety of people and property. SPD officers and employees used several vehicles to respond to the protest, including the following vehicles:

*Vehicle 1:* A 2018 Ford Transit Connect van owned by SPD and assigned to the Video Unit. This van was not marked as a police vehicle, but was equipped with a police radio and flashing strobe lights. The SPD Video Unit employees used the van for transportation, to record videos of particular locations and events, and to download surveillance video provided by local businesses and residences in support of SPD criminal investigations. During the protest on May 30, 2020, SPD used and intended to use the van for transport and to document acts of violence and property destruction. Vehicle 1 was parked on 6th Avenue between Pine Street and Olive Way.

*Vehicle 2:* A 2006 Dodge Caravan owned by SPD and assigned to the Video Unit. This van was not marked as a police vehicle, but was equipped with a police radio. The SPD used and intended to use Vehicle 2 in the same manner as Vehicle 1, both generally and during the protest on May 30, 2020. Vehicle 2 was parked on 6th Avenue between Pine Street and Olive Way, slightly behind Vehicle 1.

*Vehicle 3:* A 2009 Chevrolet Express Van owned by SPD and assigned to the South Precinct Anti-Crime Team. This van was not marked as a police vehicle, but was equipped with emergency lights and a police radio. The SPD used Vehicle 3 for the general purpose of transporting police officers and law enforcement equipment. During the protest, Vehicle 3 was parked on 6th Avenue between Pine Street and Olive Way, immediately behind Vehicle 2.

*Vehicle 4:* A 2016 Ford Explorer owned by SPD and used as a patrol car. Vehicle 4 was not marked, but was equipped with a push bumper, emergency lights, police radio, and other police equipment. During the protest, Vehicle 4 was parked on 6th Avenue between Pine Street and Olive Way, immediately behind Vehicle 3.

*Vehicle 5:* A 2017 Ford Explorer owned by SPD and used as a patrol car. Vehicle 5 was not marked, but was equipped with a push bumper, emergency lights, police radio, and other police equipment. During the protest, Vehicle 5 was parked on Pine Street near 5th Avenue.

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Vehicle 6:* A 2016 Ford Explorer owned by SPD and used as a patrol car. Vehicle 6 was not marked, but was equipped with a push bumper, emergency lights, a police radio, and other police equipment.  During the protest, Vehicle 6 was parked on 6th Avenue between Pine Street and Olive Way, directly behind Vehicle 4.

During the protests on May 30, 2020, Vehicles 1, 2, 3, 4, and 5 were all damaged and destroyed by fire by multiple known and unknown suspects.  Vehicle 6 was struck by an ignited incendiary device that then broke open on the adjacent sidewalk.  After the arsons, investigators from SPD, FBI, and ATF examined the damaged vehicles.  Vehicles 1, 3, 4, and 5 were completely destroyed by fire.  Most of what remained were the metal frames of the vehicles.  Vehicle 2 was also heavily damaged and is no longer operable, with the interior destroyed and the engine compartment burned.  ATF Special Agent and Certified Fire Investigator Dawn Dodsworth examined these vehicles.  She classified the fires in Vehicles 1, 3, 4, and 5 as "incendiary," meaning they were caused by human action.  She further determined that the fire in Vehicle 2 was caused by the natural extension and expansion of the fire in Vehicle 1 into Vehicle 2.

**C. Kelly Jackson's Criminal Activities on May 30, 2020.**

Investigators with SPD, FBI, and ATF have obtained and reviewed videos and photographs taken during the events surrounding the burning of the SPD vehicles on May 30, 2020.  This video and photographic evidence came from various sources, including SPD personnel on scene, neighboring building surveillance cameras, footage aired by local news media outlets, publicly reviewable social media posts, and from individuals who attended the protest and took their own photographs and video.

Based on these videos and photographs, FBI and ATF special agents have identified a male suspect who was involved in throwing at least two incendiary devices at the SPD vehicles.  The suspect appears to be a white male with an athletic build.  He was wearing a dark sweatshirt with a distinctive logo on the front, khaki pants, white shoes, a half-face respirator with black semi-rectangular filter cartridges, Smith ski goggles with black rims and yellow tinted lens, and a black High Sierra brand backpack.  The white shoes appear to

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   be consistent with the brand/style of Nike Air Force 1's.

2

3





4

5

6

7

8

9

10

11

12

13

14

15





16

17

18

19

20

21

22

23

24

25

26

27

28

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      Video footage shows that by approximately 4:06 p.m., Vehicle 5 was heavily

2  damaged and burned by the actions of Margaret Aislinn Channon and other suspects who are

3  currently unidentified.  Immediately prior to that, at approximately 4:04 p.m., video footage

4  shows the male suspect throwing what appears to be a glass bottle with an ignited fabric or

5  paper wick (*i.e.*, a "Molotov cocktail" device) through the open driver's side door of

6  Vehicle 5.  After the bottle entered Vehicle 5, flames spread rapidly, almost instantaneously,

7  through the passenger compartment.  The spread was consistent with the rapid escape of a

8  flammable liquid from a broken container.  As the flames receded, a few areas of the interior

9  of the vehicle continued to burn.





Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    At approximately 5:20 p.m., video footage shows the same male suspect throwing

2  what appears to be a glass bottle with an ignited fabric or paper wick (another "Molotov

3  cocktail") at the front of Vehicle 6.  The device hit the windshield of Vehicle 6, bounced to

4  the west, and then shattered on the sidewalk.  After the bottle shattered, flames spread

5  rapidly, almost instantaneously, across an approximately 12-foot radius along the sidewalk.

6  The spread was consistent with the rapid escape of a flammable liquid from a broken

7  container.  After throwing the device, the male subject can be seen running north on

8  6th Avenue into a large crowd.

9    On June 24, 2020, the Seattle FBI was forwarded an anonymous tip from the FBI's

10  National Threat Operations Center.  The anonymous reporter stated that they were providing

11  information regarding the identity of an individual "using a 'Molotov' type device to set fire

12  to [a] squad car" during the demonstrations in downtown Seattle on May 30, 2020.  The tip

13  specifically identified the above-referenced male suspect as Kelly Jackson of Edmonds,

14  Washington.  The anonymous reporter stated that they watched a video on a "peers [sic]"

15  phone showing Jackson lighting a device and throwing it at a police vehicle.  The

16  anonymous reporter also stated that they heard that Jackson had been bragging about his

17  activities amongst his friends who attended the protest.  They described Jackson as wearing a

18  "dark sweatshirt – khaki pants and also a gas mask" at the time of the arsons.  The

19  anonymous reporter further stated the gas mask was stolen from Jackson's employer, Jim

20  Dandy Plumbing.

21    FBI agents determined that there is a Jim Dandy Sewer and Plumbing located at

22  6202 214th Ave SW, Mountlake Terrace, Washington.  FBI agents reviewed Jim Dandy's

23  website and Facebook page.  On April 10, 2020, Jim Dandy Sewer and Plumbing posted a

24  picture of an employee wearing company protective equipment.

25

26

27

28

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10



11   Agents observed that the filter cartridges on the mask in the Facebook photograph

12 appeared to be consistent with the filter cartridges on the mask worn by the male arson

13 suspect on May 30, 2020.  According to the Assistant Weapons of Mass Destruction

14 Coordinator for the Seattle FBI, the respirator shown in the Facebook photograph was a

15 different model of half-face respirator than the male arson suspect wore, but would provide a

16 consistent level of protection.

17   FBI agents queried the Washington Department of Licensing (DOL) and saw that

18 Kelly Thomas Jackson has a Washington State driver's license.  Jackson's residence address

19 is listed with DOL as 21329 95th Avenue West, Edmonds, Washington.  Agents reviewed

20 Jackson's below DOL photograph:

21
22
23



24
25
26
27
28

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Agents observed that Jackson's DOL photo appeared consistent with the portion of

2  the male arson suspect's face that was visible above his mask.  Agents reviewed Jackson's

3  criminal history and learned that he has been arrested in Snohomish County on prior

4  occasions for, among other crimes, DUIs, resisting arrest, and burglary.

5  FBI agents individually interviewed three officers with the Edmonds Police

6  Department.  The officers were shown photos and videos of the male arson suspect on

7  May 30, 2020.  Each of the officers were unable to immediately identify the individual based

8  on the images alone.  However, when the agents informed the officers that the suspect was

9  believed to live in Edmonds and had contact with them before, each officer stated that Kelly

10  Jackson could be the suspect.  All three officers explained that the suspect appeared

11  consistent with the build, stature, and gait of Jackson.  They also knew Jackson to be anti-

12  law enforcement and believed the activities observed to be consistent with his past behavior.

13  FBI agents reviewed police reports and determined that Jackson typically operates a

14  white 2002 Toyota Tacoma pickup truck, with Washington license plate C76599N.  This

15  vehicle is registered in the name of Thomas William Jackson, who is Kelly Jackson's father.

16  On June 24, 25, and 26, 2020, an FBI agent observed the Toyota Tacoma parked adjacent to

17  Jim Dandy Sewer and Plumbing in Mountlake Terrace.  The same FBI agent observed the

18  Toyota Tacoma parked at Jackson's residence in Edmonds on June 24 and 25, 2020.

19  On July 2, 2020, agents observed a white male, believed to be Jackson, leaving his

20  residence and driving the Toyota Tacoma.  Jackson was wearing a dark hooded sweatshirt

21  with a design on the front.  This sweatshirt was consistent with the sweatshirt colors and logo

22  worn by arson suspect on May 30, 2020.

23

24

25

26

27

28

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970




Surveillance photo on July 2, 2020          Arsonist on May 30, 2020

Specifically, both sweatshirts are black with a small white mark on the left sleeve just above the wrist.  The front of the sweatshirts have a design made up of three images and three words.  The three images are side-by-side and evenly spaced.  The left-most image is nearly the full height of the design, and the other images are roughly one-third to one-half the height of the design.  The three images make up the left side, the bottom, and the left end of the top of the design.  The remainder of the top and the right side of the design are made up of what appears to be three words in white text.  The words are arranged in a vertical column, with one word per line.

On July 3, 2020, agents again observed a white male, believed to be Jackson, leaving Jackson's residence and driving the Toyota Tacoma.  The agents were able to see the driver of the vehicle from a very close distance, and the individual was not wearing a hat or mask.  The agents positively identified the driver as Kelly Jackson, based on their familiarity with Jackson's DOL photo and prior booking photos of Jackson from the Snohomish County Jail.

### D.  Jackson's Possession and Use of a Phone during the May 30 Arsons.

FBI agents have reviewed numerous police reports documenting prior contacts between law enforcement officers and Jackson.  Nine police reports list Jackson's phone number as (425) 892-0092.  Subscriber records obtained from Verizon Wireless list the subscriber for this phone number as Maria Jackson, with the same residential address listed

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

on Kelly Jackson's DOL records.  Based on online research, I am aware that Maria Jackson is Kelly Jackson's mother.  According to the Verizon Wireless records, telephone number (425) 892-0092 is associated with IMEI 354914090230305.  This IMEI is assigned to an Apple iPhone 7 smartphone device ("the iPhone 7").

Based on this investigation, I believe that the arsonist on May 30, 2020, believed to be Jackson, possessed and used a smartphone during the time of the arsons; and specifically, that he possessed and used the iPhone 7 device.  Multiple photographs and videos taken on May 30 show that the arsonist had an object in his pants pocket that was consistent with the size and shape of a smartphone.




According to Verizon Wireless toll records, the iPhone 7 was used during and surrounding the time frame of the arsons.  Between 3:00 p.m. and 6:00 p.m. on May 30, 2020, the iPhone 7 received 18 telephone calls for a total of approximately eleven minutes of use; and the iPhone 7 placed five phone calls for a total of approximately three minutes of use.

Based on this information, on July 31, 2020, the Honorable Chief Magistrate Judge Brian A. Tsuchida issued a search warrant directing Verizon Wireless to provide the FBI with cell-site and other locator data related to the iPhone 7, believed to be used by Kelly

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Jackson.  *See* MJ20-488.  On August 4, 2020, Verizon Wireless produced responsive records
2  to the FBI relating to the time period of May 1, 2020, through June 30, 2020.

3  The Verizon Wireless records are consistent with Kelly Jackson being in downtown
4  Seattle at the times and locations of the arsons on May 30, 2020.  The records show that
5  between 3:00 p.m. and 5:28 p.m. on May 30, 2020 (the time period of the arsons), the
6  iPhone 7 was used to make calls while connected to cell towers located at the following
7  addresses: (a) 1505 5th Avenue, Seattle; (b) 1200 5th Avenue, Seattle; (c) 1624 Boren
8  Avenue, Seattle; (d) 810 Virginia Street, Seattle; (e) "1633 6th Avenue #3&4," Seattle; and
9  (f) 1831 8th Avenue, Seattle.  These cell towers are all located in the downtown Seattle core
10  retail area.  The recorded azimuth data from the towers is consistent with the iPhone 7 being
11  located within the core retail area from approximately 3:36 p.m. until approximately
12  5:28 p.m. on May 30, 2020.  As discussed previously in this affidavit, the arson suspect
13  threw at least two incendiary devices within the core retail area, one at approximately
14  4:04 p.m. and one at approximately 5:20 p.m.

15  Notably, during the two month timeframe covered by the records provided by Verizon
16  Wireless, the only day on which the iPhone 7 connected with any of the above mentioned
17  cell towers was May 30, 2020.  During the remainder of the time period, the iPhone 7 never
18  otherwise came within two miles of the cell towers in the downtown Seattle retail core.

19  **E.  Evidence Stored in Kelly Jackson's iCloud Account.**

20  Records produced by Apple revealed that a particular iCloud account was created in
21  2019 and registered under the name Kelly Jackson, the residential address 21329 95th
22  Avenue West, Edmonds, Washington, and the phone number (425) 892-0092.  This
23  residential address is the same address listed on Jackson's driver's license and is the address
24  at which agents have observed Jackson coming and going.  The phone number is the same
25  phone number that is tied to Jackson as described above.  According to Apple records, the
26  user of the account most recently registered an iPhone 7 in October 2019.

27  Based on this information, on August 11, 2020, the Honorable Magistrate Judge Mary
28  Alice Theiler issued a search warrant directing Apple to provide the FBI with evidence

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 related to the May 30 arsons that was stored in the above-referenced iCloud account,

2 believed to be used by Kelly Jackson.  *See* MJ20-516.  On August 28, 2020, Apple produced

3 responsive records to the FBI.  These records included, among other things, the contents of

4 Jackson's iCloud Photo Library.  Jackson's iCloud Photo Library contains screenshots,

5 photographs, and videos, including several files that document Jackson's participation in the

6 events of May 30, 2020.

7 //

8 //

9 //

10 //

11 //

12 //

13 //

14 //

15 //

16 //

17 //

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 14

1    On May 29, 2020, at 12:17 p.m., a screenshot was captured containing information

2 about the "The Defiant Walk of Resistance Against Injustice."  As reflected in the below

3 screenshot, this protest event was scheduled to occur at Westlake Center in downtown

4 Seattle on Saturday, May 30, 2020, at 3:00 p.m.



16    On May 29, 2020, at 2:51 p.m., a video was created comprised of a series of still

17 images documenting additional information related to the same protest event, including the

18 message:



24    On May 30, 2020, at 11:47 a.m., a screenshot was captured containing information

25 from the website mtlcounterinfo.org, including a list of "Ingredients" used to manufacture a

26 Molotov cocktail.  The recovered screenshot is narrow and cuts off much of the surrounding

27 text.  Based on open source online research, I believe that the screenshot is a portion of the

28 webpage located at www.mtlcounterinfo.org/how-to-make-molotovs.  This webpage states:

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4

> We think that it's important for confrontational tactical knowledge to be widespread for the coming storms of revolt. Confrontational tactics can make us safer, because the police become afraid. We need to be careful when playing with fire, but with care, molotovs can greatly increase our power in the streets.

5   The screenshot from Jackson's photo library is shown below on the left, along with an image
6   of the full webpage on the right.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



On May 30, 2020, at 2:34 p.m., a video was created depicting a white male's hands opening a black bag.  Inside the bag is a green glass bottle with a gold cap, filled with a liquid that is moving inside the bottle (see below screenshot).  This item appears consistent with the Molotov cocktails Jackson threw at Vehicle 5 and Vehicle 6, as depticted in various photographs and videos taken on May 30, 2020.  It is clear that this video was taken inside of a vehicle, because seatbelt fasteners are often visible in the background.



On May 30, 2020, at 3:10 p.m., a screenshot was captured depicting an Apple Maps image showing a navigation route, including the user's current location.  At the time of the screenshot, the user was located at the intersection of Stewart Street and Terry Avenue in downtown Seattle, a few blocks away from the scene of the arsons of Vehicle 5 and Vehicle 6.

On May 30, 2020, at 4:04 p.m., a video was created depicting the male arson suspect throwing what appears to be a glass bottle with an ignited fabric or paper wick (*i.e.*, a "Molotov cocktail" device) through the open driver's side door of Vehicle 5.  After the bottle enters Vehicle 5, flames spread rapidly, almost instantaneously, through the passenger

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   compartment.  The spread was consistent with the rapid escape of a flammable liquid from a

2   broken container.  As the flames receded, a few areas of the interior of the vehicle continued

3   to burn.  Notably, the video begins prior to the subject entering the frame, suggesting

4   foreknowledge of the impending act on the part of the individual capturing the video.

5   Immediately after throwing the Molotov cocktail into Vehicle 5, the arson subject runs back

6   over to the individual capturing the video and celebrates directly in front of the camera.  The

7   file data associated with this video indicates that it was taken at 4:04 p.m., although it was

8   not "created" in Jackson's iCloud Photo Library until 6:28 p.m.  Based on this information,

9   my training and experience, and the information submitted in the aforementioned anonymous

10   tip, I believe this video was captured by one of Jackson's associates, and provided to Jackson

11   after the fact.  Below are images of the arsonist's distinctive sweatshirt as captured in this

12   video.

 

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

On May 30, 2020, at 7:10 p.m., a photograph was taken using an Apple iPhone 7. This photograph (below) depicts Kelly Jackson wearing a black hooded sweatshirt and a patterned head covering consistent with the distinctive items worn by the arsonist on May 30, 2020.



**F.  The Destructive Devices.**

In the course of my investigation, I conferred with ATF Senior Explosives Enforcement Officer (EEO) Brennan Phillips. EEO Phillips has the responsibility within ATF for making Device Determinations under the National Firearms Act as required by 27 C.F.R. § 478.27.  EEO Phillips has conducted an initial review of the evidence relating to the arsons of Vehicle 5 and Vehicle 6 on May 30, 2020.  According to EEO Phillips, the glass container filled with a suspected ignitable liquid and fitted with a wick, commonly known as "Molotov cocktail," was designed as a weapon and would be properly identified as

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  an incendiary bomb.[2]  Incendiary bombs are "destructive devices" as that term is defined in

2  26 U.S.C. §5845(f), and are therefore regulated in accordance with the Federal Firearms

3  Regulations.  Additionally, EEO Phillips advised that incendiary bombs fall within the

4  definition of "incendiary device" found in 18 U.S.C. §232(5), and are therefore explosives as

5  that term is defined in 18 U.S.C. §844(j).  EEO Phillips further advised he would need to

6  conduct a further analysis before making a finial Device Determination and submitting it for

7  peer review and approval by the Explosives Enforcement Branch.

8        On September 1, 2020, ATF agents involved with this investigation confirmed that

9  Kelly Jackson had not registered any destructive devices as required under the National

10  Firearms Act.

11            **CELLULAR PHONES OR WIRELESS COMMUNICATION DEVICES**

12        Cellphones or "Wireless Communication Devices" includes cellular telephones and

13  other devices such as tablets (e.g. iPads and other similar devices) used for voice and data

14  communication through cellular or Wi-Fi signals.  These devices send signals through

15  networks of transmitter/receivers, enabling communication with other wireless devices or

16  traditional "land line" telephones.  Many such devices can connect to the Internet and

17

18  _____

19  [2] The Ninth Circuit Court of Appeals recently reaffirmed the well-settled proposition that a Molotov cocktail device
constitutes a "destructive device" under federal law.  *United States v. Barker*, 689 Fed. Appx. 555 (9th Cir. 2017) ("We

20  hold that a Molotov cocktail fits within the firearm category of 'a destructive device.'  A Molotov cocktail is an
incendiary device that is quite similar to a grenade. Therefore, possession constitutes a crime of violence.").  Federal

21  "courts have uniformly held that a fully-assembled Molotov cocktail device – defined as a device comprising a bottle,
gasoline, and a rag – constitutes an 'incendiary ... bomb' or 'similar device' under section 5845(f)."  *United States v.*

22  *Simmons*, 83 F.3d 686, 687–88 (4th Cir. 1996) (citing *United States v. Peterson*, 475 F.2d 806, 811 (9th Cir. 1973)
(device comparable to a Molotov cocktail was a "destructive device"); *United States v. Neal*, 692 F.2d 1296, 1303-04

23  (10th Cir.1982) (affirming conviction for possession of a destructive device made from "a one gallon plastic jug, a
flammable liquid, and a rag wick"); *United States v. Campbell*, 685 F.2d 131, 132 (5th Cir.1982) (sustaining indictment

24  for possession of a destructive device "made from cloth rags, [and] flammable liquid with a fuse made of incense
sticks"); *United States v. Ross*, 458 F.2d 1144, 1144-46, 1144 n. 1 (5th Cir. 1972) (affirming conviction for possession of

25  "crude incendiary devices" consisting of "a quart glass bottle with cloth therein and containing a flammable liquid and
having a cloth wick in the mouth of said bottle); *United States v. Curtis*, 520 F.2d 1300, 1304 (1st Cir.1975) ("[W]hile

26  gasoline, bottles and rags all may be legally possessed, their combination into the type of home-made incendiary bomb
commonly known as a Molotov cocktail creates a destructive device."); *United States v. Wilson*, 546 F.2d 1175, 1177

27  (5th Cir.) (same); *United States v. Tankersley*, 492 F.2d 962, 966 (7th Cir.1974) (affirming conviction for possession of a
"destructive device" which consisted of "a bottle, a firecracker and tape, and paint remover: the components of a

28  Molotov cocktail")).

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

interconnect with other devices such as car entertainment systems or headsets via Wi-Fi, Bluetooth or near field communication (NFC).  In addition to enabling voice communications, wireless communication devices offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books" or "contact lists;" sending, receiving, and storing short message service (SMS) and multi-media messaging service (MMS) text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; and storing dates, appointments, and other information on personal calendars.

Based upon my training and experience, all of these types of information may be evidence of crimes under investigation.  Stored e-mails and text messages not only may contain communications relating to crimes, but also help identify the participants in those crimes.  Address books and contact lists may help identify co-conspirators.  Similarly, photographs on a cellular telephone may help identify the device user and co-conspirators, either through his or her own photographs, or through photographs of friends, family, and associates.  Digital photographs also often have embedded location data GPS information that identifies where the photo was taken.  This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.  Calendar data may reveal the timing and extent of criminal activity.

A cellphone used for cellular voice communication will also typically contain a "call log" or "stored list of recent, received, sent or missed calls" which records the telephone number, date, and time of calls made to and from the phone.  The stored list of recent received, missed, and sent calls is important evidence.  It identifies telephones recently in contact with the telephone user and may help identify co-conspirators, establish a timeline of events and/or identify who was using the phone at any particular time.

In addition, wireless communication devices will typically have an assigned number and identifying serial number such as an ESN, MIN, IMSI or IMEI number that identifies the particular device on any network.  This identifying information may also include the device's assigned name (as assigned by the user) and network addresses such as assigned IP addresses

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

and MAC address.  I know based on my training and experience that such information may

be important evidence of who used a device, when it was used, and for what purposes it may

have been used.  This information can be used to obtain toll records and other subscriber

records, to identify contacts by this telephone with other telephones, or to identify other

telephones used by the same subscriber or purchased as part of a package.

Many wireless communication devices including cellular telephones such as iPhones,

iPads, Android phones, and other "smart phones" as well as tablet devices such as Apple

iPads may also be used to browse and search the Internet.  These devices may browse and

search the internet using traditional web browsers such as Apple's Safari browser or

Google's Chrome browser as well as through third-party applications such as Facebook,

Twitter and others that also provide the ability to browse and search the internet.  Based on

my training and experience, I know that internet browsing history may include valuable

evidence regarding the identity of the user of the device.  This evidence may include online

user names, account numbers, e-mail accounts and bank accounts as well as other online

services.  Internet browsing history may also reveal important evidence about a person's

location and search history.  Search history is often valuable evidence that may help reveal a

suspect's intent and plans to commit a crime or efforts to hide evidence of a crime and may

also help reveal the identity of the person using the device.

Cellphones and other wireless communication devices are also capable of operating a

wide variety of communication applications or "Apps" that allow a user to communicate

with other devices via a variety of communication channels.  These additional

communication channels include traditional cellular networks, voice over internet protocol,

video conferencing (such as FaceTime and Skype), and a wide variety of messaging

applications (such as SnapChat, What'sApp, Signal, Telegram, Viber and iMessage).  I know

based on my training and experience that there are hundreds of different messaging and

conferencing applications available for popular cellular telephones and that the capabilities

of these applications vary widely for each application.  Some applications include end-to-end

encryption that may prevent law enforcement from deciphering the communications without

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  access to the device and the ability to "unlock" the device through discovery of the user's

2  password or other authentication key.

3      Other communication applications transmit communications unencrypted over

4  centralized servers maintained by the service provider and these communications may be

5  obtained from the service provider using appropriate legal process.  Other applications

6  facilitate multiple forms of communication including text, voice, and video conferencing.

7  Information from these communication apps may constitute evidence of the crimes under

8  investigation to the extent they may reveal communications related to the crime or evidence

9  of who the user of the device was communicating with and when those communications

10  occurred.   Information from these communication apps may also reveal alias names used by

11  the device owner that may lead to other evidence.

12      I know based on my training and experience that obtaining a list of all the applications

13  present on a cellphone may provide valuable leads in an investigation.  By determining what

14  applications are present on a device, an investigator may conduct follow-up investigation

15  including obtaining subscriber records and logs to determine whether the device owner or

16  operator has used each particular messaging application.  This information may be used to

17  support additional search warrants or other legal process to capture those communications

18  and discover valuable evidence.

19      Cellphones and other wireless communication devices may also contain geolocation

20  information indicating where the device was at particular times.  Many of these devices track

21  and store GPS and cell-site location data to provide enhanced location based services, serve

22  location-targeted advertising, search results, and other content.  Numerous applications

23  available for wireless communication devices collect and store location data.  For example,

24  when location services are enabled on a handheld mobile device, many photo applications

25  will embed location data with each photograph taken and stored on the device.  Mapping

26  applications such as Google Maps may store location data including lists of locations the

27  user has entered into the application.  Location information may constitute evidence of the

28  crimes under investigation because that information may reveal whether a suspect was at or

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 23

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

near the scene of a crime at any given moment and may also reveal evidence related to the identity of the user of the device.

Based on my training, experience, and research, I know that cellular telephones have "smartphone" capabilities that allow them to function as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. In my training and experience, smart phones can acts as a mini-computers in that they have many of the functionalities of traditional computers.

Searching a cellular phone or wireless communication device is frequently different than conducting a search of a traditional computer. Agents and forensic examiners will attempt to extract the contents of the cellular phone or wireless communication device using a variety of techniques designed to accurately capture the data in a forensically sound manner in order to make the data available to search for the items authorized by the search warrant. This may involve extracting a bit-for-bit copy of the contents of the device or, if such an extraction is not feasible for any particular device, the search may involve other methods of extracting data from the device such as copying the device's active user files (known as a logical acquisition) or copying the device's entire file system (known as a file system acquisition). If none of these methods are supported by the combination of tools available to the examiner and the device to be searched, the agents and examiners may conduct a manual search of the device by scrolling through the contents of the device and photographing the results.

//
//
//
//
//
//

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 24

1

## CONCLUSION

2      Based on the forgoing, there is probable cause to believe that evidence of violations of

3 Tile 26, United States Code, Section 5861(d) (Unlawful Possession of Destructive Devices),

4 and Title 18, United States Code, Sections 844(f)(1) and 844(i) (Arson), have been

5 committed by Kelly Jackson, and that evidence of those violations will be found in the

6 premises located at 21329 95th Avenue West, Edmonds, Washington, and in the white

7 2002 Toyota Tacoma pickup truck, with Washington license plate C76599N.

8

9

10

11      NATHAN PLOUGH, Affiant
      Special Agent, FBI

12

13      The above-named agent provided a sworn statement attesting to the truth of the

14 foregoing affidavit on the 2nd day of September, 2020.

15

16

17

18      MICHELLE L. PETERSON
      United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

Affidavit of Special Agent Nathan Plough
USAO# 2020R00533 – Page 25

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970